IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO AREA I. B. OF T. HEALTH AND WELFARE TRUST FUND, the CHICAGO AREA I.B. OF T. PENSION TRUST FUND, and the CHICAGO AREA I.B. OF T. SEVEREANCE AND RETIREMENT FUND by and through their Trustees HOWARD C. MURDOCH, RONALD SANDACK, PATRICK BRUNO, AND MICHAEL G. PHILIPP<br>      Plaintiff,<br><br>v.<br><br>OLYMPIC WHOLESALE PRODUCE, INC., NICHOLAS DOUMOURAS, OLYMPIC, LCC d/b/a OLYMPIC INC., and 765 BUSSE HIGHWAY APARTMENTS LLC,<br>      Defendants. | Case No. 18-cv-00202<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are the parties' cross-motions for summary judgment on Count III of Plaintiff's amended complaint, which alleges that Defendant 765 Busse Highway Apartments LLC is jointly and severally liable for Defendant Olympic Wholesale Produce, Inc.'s withdrawal liability owed to Plaintiff Chicago Area I.B. of T. Pension Trust Fund. See [34]; [38]. For the reasons explained below, the Court grants Plaintiff's motion [34] and denies Defendants' motion [38]. Busse Apartments is jointly and severally liable for the withdrawal liability owed by Defendant Olympic Wholesale Produce, Inc. to the Chicago Area I.B. of T. Pension Trust Fund. As of today, that liability totals $258,002.86. Additionally, Plaintiff is given leave to file a motion for (1) supplemental interest starting from October 19, 2018 and (2) attorneys' fees and costs. That

motion should be filed no later than July 22, 2019. The Court sets this case for further status hearing on July 25, 2019 at 10:00 a.m. to discuss the remaining issues in the case.

I.  Background

On January 11, 2018, the Chicago Area I.B. of T. Health and Welfare Trust Fund, the Chicago Area I.B. of T. Pension Trust Fund, and the Chicago Area I.B. of T. Severance and Retirement Fund (collectively, "the Funds") by and through their Trustees Howard C. Murdoch, Ronald Sandack, Patrick Bruno, and Michael G. Philipp filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"). See generally [1]. The original complaint named Olympic Wholesale Produce, Inc. ("Olympic Produce") and Nicholas Doumouras as defendants, alleging that Olympic Produce failed to pay employee benefit fund contributions and that it and Doumouras were jointly and severally liable for all unpaid amounts that were owed to the Funds ("Count I"). *Id*.

Plaintiffs subsequently amended their complaint to add two additional counts. See generally [12]. Specifically, Plaintiff Chicago I.B. of T. Pension Trust Fund ("the Pension Fund") alleged that Olympic Produce withdrew from the Pension Fund and thus incurred withdrawal liability, which Olympic Produce failed to pay ("Count II"). [12, ¶¶ 14–15, 21.] The Pension Fund also claimed that defendants Olympic, LLC and 765 Busse Highway Apartments LLC ("Busse Apartments") were jointly and severally liable for Olympic Produce's withdrawal liability ("Count III"). [*Id*. ¶ 46.]

On June 13, 2018, the Court entered a default judgment against Olympic Produce for Counts I and II. See generally [26]. The Pension Fund subsequently moved for summary judgment against Busse Apartments on Count III. See generally [34]. Defendants also filed a cross-motion for summary judgment. See generally [38]. Pursuant to Local Rule 56.1(a)(3), the Pension Fund

submitted a statement of material facts in support of its motion for summary judgment. See generally [35]. Defendants have done the same. See generally [49]. The following facts are undisputed facts for purposes of deciding the summary judgment motions.

The Pension Fund is a multiemployer pension plan funded by contributions from over 35 employers. [49, ¶ 1.] Olympic Produce is an Illinois corporation. [*Id*. ¶ 2.] Olympic Produce incurred withdrawal liability as to the Pension Fund pursuant to the successive bargaining agreements it entered with the various Plaintiff Funds in December 2017 when Olympic Produce closed as a result of a legal action filed by its produce suppliers to recover on unpaid invoices. [*Id*. ¶¶ 6–18.] In December 2017, Doumouras owned 100 percent of Olympic Produce. [*Id*. ¶ 20.]

Busse Apartments is a for-profit limited liability company. [*Id*. ¶ 21.] In December 2017, the Nicholas Doumouras Revocable Trust owned 95 percent of Busse Apartments. [*Id*. ¶ 22.] As of December 2017, Doumouras was the sole beneficiary of the Nicholas Doumouras Revocable Trust. [*Id*. ¶ 23.] Busse Apartments earns rental income by leasing out apartment units at 765 Busse Highway, Park Ridge, Illinois, which it owns. [*Id*. ¶¶ 24-25]. Busse Apartments has a Federal Employer Identification Number ("FEIN") and receives tax deductions. [*Id*. at ¶¶ 26–27.] Finally, in Busse Apartments' Operating Agreement, it states that "[t]he business of the Company shall be to engage in the acquisition, ownership, leasing, management, and operation of real estate * * *." [39-1, 12.]

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Rule 56 makes clear that whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record,

including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id.* In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But a non-moving party "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation and quotation marks omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other

words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Finally, as courts in this district have repeatedly noted, when, as here, parties have filed cross-motions for summary judgment, the analytical endeavor can be a Janus-like one that can require consideration of any legitimate factual disputes in the record as they bear on each movant's respective summary judgment claims. See, e.g*., Northern Contracting Inc. v. State of Illinois*, 2004 WL 422704, *46 (N.D. Ill. March 3, 2004) ("In cases such as this involving cross-motions for summary judgment, 'the court must extend to each party the benefit of any factual doubt when considering the other's motion-a Janus-like perspective * * *.'") (quoting *Buttitta v. City of Chicago,* 803 F. Supp. 213, 217 (N.D. Ill.1992)). The Court proceeds accordingly.

## III.    Analysis

Nowhere in Defendants' motion for summary judgment or in Busse Apartment's response to Plaintiff's motion for summary judgment do they suggest that Olympic Wholesale does not owe withdrawal liability or the amount of that debt. And, in any case, Defendants have waived the argument given that Judge Blakey entered a default judgment order [26] setting forth the amount of withdrawal liability owed by Olympic Produce pursuant to its agreement with the Plaintiff Funds.[1] Consequently, the only dispute before the Court is whether Busse Apartments can be held jointly and severally liable for the withdrawal liability incurred by Olympic Produce.

---

[1] However, the amount of other damages—*i.e.*, interest, liquidated damages, reasonable attorneys' fees, and costs—remains outstanding to the extent not addressed by the Court's opinion in Section III(C) *infra.*

A. **Liability**

The Employee Retirement Income Security Act of 1974 ("ERISA"), later amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), provides in part that "[i]f an employer withdraws from a multiemployer plan * * *, then the employer is liable to the plan in the amount determined * * * to be the withdrawal liability." 29 U.S.C. § 1381. Additionally, ERISA provides that "all trades and businesses [which are under common control, shall be treated] as a single employer." 29 U.S.C. § 1301. Thus, "[u]nder this section, each trade or business under common control is jointly and severally liable for any withdrawal liability of any other." *McDougall v. Pioneer Ranch L.P.*, 494 F.3d 571, 574 (7th Cir. 2007).

The Pension Fund argues that Busse Apartments is a "trade or business" under common control with Olympic Produce. [36, at 5.] If the Pension Fund prevails on that argument, Busse Apartments is jointly and severally liable for Olympic Produce's withdrawal liability from the Fund. [*Id*. at 9.] Busse Apartments contends that it is neither a "trade or business" nor under common control with Olympic Produce and therefore cannot be held jointly and severally liable for Olympic Produce's withdrawal liability from the fund. [48, at 4–8.]

1. **Trade or business**

29 U.S.C. § 1301 does not define the phrase "trade or business." Nonetheless, for purposes of defining the term under the MPPAA, the Seventh Circuit has adopted the "*Groetzinger* test" as set out in *Commissioner of Internal Revenue v. Groetzinger*, 480 U.S. 23 (1987); *Cent. States, Southeast & Southwest Areas Pension Fund v. Nagy,* 714 F.3d 545, 550 (7th Cir. 2013). Under this test, to be considered a trade or business an "activity must be performed (1) for the primary purpose of income or profit; and (2) with continuity and regularity." *Cent. States, Southeast & Southwest Areas Pension Fund v. Messina Prod., LLC*, 706 F.3d 874, 878 (7th Cir. 2013).

The Seventh Circuit generally recognizes that "formally recognized business organizations pose 'no interpretative difficulties' for the *Groetzinger* test." *Cent. States, Southeast & Southwest Areas Pension Fund v. CLP Venture LLC*, 760 F.3d 745, 750 (7th Cir. 2014) (quoting *Central States, Southeast & Southwest Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001)). Indeed, "[b]ecause formal business organizations ordinarily operate with continuity and regularity and are ordinarily formed for the primary purpose of income or profit, it seems highly unlikely that a formal for-profit business organization would not qualify as a 'trade or business' under the *Groetzinger* test." *Cent. States, Southeast & Southwest Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 878 (7th Cir. 2011). Here, it is undisputed that Busse Apartments is a limited liability company, a "formally recognized business organization" and for-profit business. See [49, ¶ 21].

The Court next turns to whether Busse Apartments performed an activity "(1) for the primary purpose of income or profit; and (2) with continuity and regularity." As an initial matter, the Court notes that *Board of Trustees of the Automobile Mechanics' Local No. 701 Union and Industry Pension Fund v. 6516 Ogden Ave., LLC*, 170 F. Supp. 3d 1179 (N.D. Ill. 2016), presented a nearly identical set of facts. In that case, a corporation—Anderson Bros. Ford, Inc.—incurred withdrawal liability to the plaintiff pension fund. *Id*. at 1181. The fund's board sued to hold the defendant limited liability corporation jointly liable for the withdrawal liability because it was owned by the corporation's owner. *Id*. Finding that the defendant limited liability company was a "trade or business" because it (1) was a formally recognized business organization; (2) leased property, earning rental income by doing so; and (3) claimed business deductions on its tax returns, the Court concluded that the defendant was a trade or business as the LLC had the primary purpose of income or profit and engaged in such activities continuously and regularly. *Id*. Additionally,

the Seventh Circuit has held "that 'a defendant's stated intention of forming a business is highly relevant, because it constitutes a declaration against interest.'" *Pioneer Ranch, L.P.*, 494 F.3d at 577–78 (quoting *Connors v. Incoal, Inc.*, 995 F.2d 245, 254 (D.C. Cir. 1993)). In *Pioneer Ranch*, for example, the court of appeals pointed out that Pioneer Ranch's partnership agreement stated that the purpose of the company was "to engage in the business of farming, ranching, and any agricultural pursuit or undertaking * * *." 494 F.3d at 577. And the court considered this stated purpose in affirming the district court's determination that Pioneer Ranch was a "trade or business." *Id.* at 578.

Here, it is undisputed that: Busse Apartments (1) is a formally recognized business organization—specifically, an LLC; (2) leases apartments and earns rental income from those leases; and (3) has received tax deductions. [49, ¶¶ 21, 25, 27.] Likewise, Busse Apartments' Operating Agreement states that "[t]he business of the Company shall be to engage in the acquisition, ownership, leasing, management, and operation of real estate * * *." [39-1, at 12.] Thus, Busse Apartments appears to fall clearly within the definition of a "trade or business" under Seventh Circuit precedent.

Busse Apartments responds that it cannot be a "trade or business" because the Pension Fund has not produced sufficient evidence that it engaged in continuous and regular business activities. [48, at 4–5.] The case law that Busse Apartments cites however is clearly distinguishable on its facts. All the cases cited by Busse Apartments addressed instances in which an individual person personally owned and leased property, rather than doing so through a formal business organization, such as Busse Apartments. See *Cent. States, Southeast & Southwest Areas Pension Fund v. Fulkerson*, 238 F.3d 891 (7th Cir. 2001); *Cent. States, Southeast & Southwest Areas Pension Fund v. Dizack*, 2018 WL 1087640, at *9 (N.D. Ill. Feb. 28, 2018). In fact, Judge

Leinenweber in *Dizack*—despite ultimately concluding that the individual defendant's property ownership was a trade or business—noted the question would be less "thorny" if the defendant in question had been a formally organized business organizations rather than an individual's "informal real estate activities." 2018 WL 1087640, at *9.

In sum, the Court concludes that Busse Apartments is a "trade or business" under 29 U.S.C. § 1301. Thus, the only remaining question is whether Busse Apartments and Olympic Produce were under common control when Olympic Produce incurred withdrawal liability.

### 2. Common control

"The MPPAA draws its definition of 'common control' from the regulations promulgated under § 414(c) of the Internal Revenue Code." *SCOFB*, 668 F.3d at 881; see also 29 U.S.C. § 1301(b)(1) ("The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed * * * by the Secretary of the Treasury under section 414(c) of the Internal Revenue Code of 1986 * * *.") 26 C.F.R § 1.414(c)-2 outlines three ways in which two or more trades or business can be under common control: (1) a parent-subsidiary group, (2) a brother-sister group, and (3) some combination of the previous two. The parties appear to agree that the relevant question is whether the two entities here constitute a brother-sister group. The relevant regulations define a brother-sister group as two or more trades or businesses where the same five or fewer persons have both a (1) controlling interest in each organization and (2) those same five or fewer persons are in effective control of each organization. 26 C.F.R. § 1.414(c)-2(c)(1). A controlling interest for a corporation is defined as ownership of at least 80 percent of either total voting power or total value of all shares of stock and effective control is 50 percent. 26 C.F.R. §§ 1.414(c)-2(b)(ii)(2)(A), 1.414(c)-2(c)(2)(i). For partnerships, a controlling interest is at least 80 percent of the "profits interests" or "capital interest" of the partnership and effective

control is 50 percent. *Id.* §§ 1.414(c)-2(b)(ii)(2)(C), 1.414(c)-2(c)(2)(iii). Section 1.414(c)-2 does not address whether LLCs should be considered as corporations or partnerships for determining common control. However, whether an LLC should be treated as a corporation or a partnership for a "common control" analysis does not matter given Doumouras personally controlled 95 percent and 100 percent of the relevant entities, as explained below.

It is undisputed that Olympic Produce, at the time of the withdrawal from the Pension Fund, was an Illinois corporation. [49, ¶ 2.] Likewise, Busse Apartments admits that Doumouras owned 100% of Olympic Produce at the time of withdrawal. [*Id*. at ¶ 20.] This is well above both the 80% threshold to have a controlling interest and the 50% threshold to have effective control over the corporation, as set out in § 1.414(c)-2(b)(ii)(2)(A). The only question is whether Doumouras had a controlling interest and effective control over Busse Apartments at the time of withdrawal.

The Nicholas Doumouras Revocable Trust owned 95 percent of Busse Apartments at the time of withdrawal. [49, ¶ 22.] See also [39-1, 19.] Additionally, Doumouras, while alive and not incapacitated, was the sole beneficiary of the Nicholas Doumouras Revocable Trust at the time of withdrawal. [49, ¶ 23]; see also [39-1, at 21]. The only dispute between the parties is whether the Trust's ownership of Busse Apartments can be treated as Doumouras' ownership for the purposes of determining whether the two entities were under common control. The Pension Fund argues that it can and that therefore Doumouras owned 95 percent of Busse Apartments. [36, at 7]. Busse Apartments responds that the Court may not "pierce" the trust and treat the trust's ownership of the LLC as if it had belonged to Doumouras for the purposes of establishing common control. [48, at 7.]

26 C.F.R. § 1.414(c)-4(a) provides that for "determining the ownership of an interest in an organization for purposes of 1.414(c)-2 [common control analysis] * * *, the constructive

ownership rules of paragraph (b) of this section shall apply * * *." Paragraph (b), as referred to in the previous section, in relevant part provides,

> [a]n interest in an organization ["organization interest"] owned, directly or indirectly, by or for [a] * * * trust shall be considered as owned by any beneficiary of such * * * trust who has an actuarial interest of 5 percent or more in such organization interest, to the extent of such actuarial interest.

26 C.F.R § 1.414(c)-4(b)(3)(i). In other words, for the purposes of determining if two entities are under common control, if a trust has an interest in an entity, it is attributed to the beneficiaries of that trust provided that beneficiary has an actuarial interest greater than or equal to 5 percent. As just explained, at the time of withdrawal the Nicholas Doumouras Trust owned or controlled 95 percent of Busse Apartments and Doumouras was the sole beneficiary of that interest. [49, ¶¶ 22–23.] Pursuant to § 1.414(c)-4(b)(3)(i), the Court must treat Doumouras as having held a 95 percent ownership of Busse Apartments. See, e.g., *Central States, Southeast and Southwest Areas Pension Fund v. PHBC, LLC*, 2018 WL 4898878, at *7–8 (N.D. Ill. Oct. 9, 2018) (following 26 C.F.R. § 1.414(c)–4(b)(3) and holding that a trust beneficiary could be treated as owning the relevant shares for determining common ownership); *Cent. States, Southeast & Southwest Areas Pension Fund v. Ray C. Hughes, Inc.*, 2012 WL 1520721, at *3 (N.D. Ill. Apr. 30, 2012) (same); *Cent. Stats v. SCOFBP, LLC*, 738 F. Supp. 2d 840, 846 (N.D. Ill. 2010) (same).

Because Doumouras held 100 percent ownership of Olympic Produce and 95 percent ownership of Busse Apartments by virtue of the trust, Olympic Produce and Busse Apartments formed a brother-sister group and were under common control at the time of withdrawal. And, because Busse Apartments constitute a "trade or business" at the time of withdrawal, Busse Apartments is jointly and severally liable for Olympic Produce's withdrawal liability. The Court therefore grants summary judgment in favor of the Pension Fund and against Busse Apartments. The Court shall enter judgment against Busse Apartments and for the Pension Fund on Count III.

## B. Damages[2]

That leaves the question of damages. The default judgment order entered by Judge Blakey establishes that, at a minimum, Busse Apartments is liable for the $209,571.00 in withdrawal liability that Judge Blakey entered against Olympic Produce in his default judgment order. See [26]. However, as the Pension Fund notes, delinquent withdrawal liability payments are treated as delinquent employer contributions under ERISA and are therefore enforceable under Title I of ERISA. See 29 U.S.C. § 1451. Under Title I, a judgment for delinquent contributions entitles the fund to the award of the unpaid contributions, interest, liquidated damages, and attorneys' fees and costs. 29 U.S.C. § 1132(g)(2). The award of interest, liquidated damages, and attorneys' fees and costs is mandatory. *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992) (explaining that given § 1451 expressly assimilates failures to satisfy withdrawal liability to violations of 29 U.S.C. § 1145, the award of additional amounts are mandatory). The Court thus turns to the determination of the proper amount of damages in each category.

Under the applicable regulations, interest is calculated from the date payment was due to the date of payment, using rates based on prevailing market rates for comparable obligations as reported in the Federal Reserve Statistical Release H.15 as of the fifteenth day of the month preceding the beginning of the quarter for which interest is assessed. See 29 C.F.R. §§ 4219.32(b). On December 15, 2017 and March 15, 2018, the applicable interest rate reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15 was 4.5 percent. [49, ¶ 30.] On June 15, 2018 and September 15, 2018, the applicable interest rate reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15 was 5 percent. *Id.*

---

[2] Busse Apartments does not address, nor not contest, any part of the Pension Fund's analysis regarding the amount that the LLC would owe if found liable for Olympic Produce's debt. Consequently, it has waived any arguments it may have as to the correct amount of liability.

Consequently, Olympic Produce, Busse Apartments, and any other control group members owe interest on the entire withdrawal liability of $209,571 from the date of default, February 20, 2018,[3] through June 30, 2018 at the rate of 4.5 percent, and from July 1, 2018 to at least October 19, 2018 at the rate of 5 percent. [*Id.* ¶ 31.] As of October 19, 2018, interest calculated according to these rates totaled $6,517.66. [*Id.*] Because interest continues to accrue until the date of payment, see 29 C.F.R. § 4219.32(a)(1), the Pension Fund requests leave to file a supplemental motion for interest accrued from October 19, 2018 onward, which the Court grants.

Next, pursuant to 29 U.S.C. § 1132(g)(2)(c), the Pension Fund is entitled to liquidated damages in an amount equal to the greater of interest of the unpaid contributions or up to 20 percent of the withdrawal liability owed. Here, 20 percent of $209,571 equals $41,914.20 and that amount exceeds the interest incurred to date. Accordingly, the Court must award the Pension Fund the $41,914.20 in liquidated damages.

Finally, § 1132(g)(2)(d) entitles the Pension Fund to reasonable attorneys' fees and costs of the action. Because, as the Pension Fund notes, the attorneys' fees and costs owed by Olympic Produce, Busse Apartments and any other control group members continue to accrue, the Court grants the Pension Fund leave to file a motion for attorneys' fees establishing those reasonable fees and costs.

---

[3] Pursuant to 29 C.F.R. § 4219.32(d), "due date" is defined as "Except as otherwise provided in rules adopted by the plan, the due date from which interest accrues shall be, for an overdue withdrawal liability payment and for an amount of withdrawal liability in default, the date of the missed payment that gave rise to the delinquency or the default." Defendants do not dispute that in this case, payment of the withdrawal liability was due on the date of default, February 20, 2018. See [49, ¶ 31.]

Thus, as of today, Olympic Produce, Busse Apartments, and any another other control group members are jointly and severally liable for $258,002.86 to the Pension Fund, plus any additional interest, attorneys' fees, and costs Plaintiff may show at a later date.[4]

IV.  **Conclusion**

For the reasons stated above, the Court grants Plaintiff's motion for summary judgment [34] and denies Defendants' cross-motion for summary judgment [38].  Busse Apartments is jointly and severally liable for the withdrawal liability owed by Defendant Olympic Wholesale Produce, Inc. to the Chicago Area I.B. of T. Pension Trust Fund.  As of today, that liability totals $258,002.86.  Additionally, Plaintiff is given leave to file a motion for (1) supplemental interest starting from October 19, 2018 and (2) attorneys' fees and costs.  That motion should be filed no later than July 22, 2019  The Court sets this case for further status hearing on July 25, 2019 at 9:00 a.m. to discuss the remaining issues in the case.

Dated:  July 9, 2019

                                                Robert M. Dow, Jr.
                                                United States District Judge

---

[4] The Court notes the disparity between this amount from the judgment entered against Olympic Produce on June 13, 2018 [26].  However, that judgment included attorneys' fees up to that point, which have since presumably increased, and are not yet reflected in the amount awarded.